45 C.C.P.A.(Patents)

**SURE–FIT PRODUCTS COMPANY,**
Appellant,

v.

**SALTZSON DRAPERY COMPANY,**
Appellee.

**Patent Appeal No. 6342.**

United States Court of Customs
and Patent Appeals.

April 11, 1958.

Leonard L. Kalish, Philadelphia, Pa.,
for appellant.

Leon Edelson, Philadelphia, Pa., for
appellee.

Before JOHNSON, Chief Judge, and
O'CONNELL, WORLEY, RICH, and
JACKSON retired, Associate Judges.

JOHNSON, Chief Judge.

This is an appeal in an opposition pro-
ceeding from the decision of the Assist-
ant Commissioner of Patents, 110 USPQ
371, reversing the decision of the Exam-
iner of Interferences which sustained the
opposition and which held that applicant
(appellee here) was not entitled to the
registration sought.

No testimony was taken by either par-
ty, both having stipulated the relevant
facts.

Appellee is in the business of manufac-
turing, selling and distributing draperies
and since 1946 has been engaged in the
business of manufacturing, selling and
distributing ready-made slip covers for
various articles of furniture, including
studio couches and daveno [1] beds. On
March 9, 1950, it adopted as its trade-
mark for said slip covers the term "Rite-
Fit," superimposed in script form upon
the pictorial representation of an artist's
palette with two paint brushes disposed
in the thumb hole. The word "Product,"
in block letters smaller than the letters
which form the term "Rite-Fit," appears
immediately beneath the latter term.
Appellee has disclaimed the words "Rite-
Fit Product" apart from the mark as a
whole. Its application for registration

---

[1]. Appellee has agreed in its brief that
this word should be "divan," "davenport"
or "sofa," since there is no such word
as "daveno."

of this mark on the principal register under the Lanham Act, 15 U.S.C.A. § 1051 et seq., is the one opposed in this proceeding.

Opposer (appellant here) has used the term "Sure-Fit" as its trademark on and in connection with the sale of its ready-made slip covers since January, 1926. Appellant was the owner of two registrations granted to it on the "Sure-Fit" mark.[2] The term "Sure-Fit" in the 1950 registration, which is the only one which need be discussed here, is printed in a script similar to the script of appellee's "Rite-Fit" mark.

According to the stipulation, appellant has "extensively advertised, in periodicals having national circulation and in other advertising media," its "Sure-Fit" mark.

The documentary evidence submitted by appellant consists primarily of instruction folders and leaflets for fitting the slip covers on furniture. Several of its exhibits refer to the fact that its mark has been advertised in such publications as "Better Homes and Gardens," "Life," "Collier's," "House & Garden," and "The New York Times." No advertising specimens were introduced by appellee, though the stipulation indicates that its mark has been advertised.

Also in evidence are eleven third-party registrations containing the word or suffix "Fit," which registrations were introduced by appellee.

Appellee has conceded, for purposes of this proceeding, that, despite its disclaimer of the words "Rite-Fit Product" apart from the mark as a whole, the term "Rite-Fit" constitutes the dominant part of its mark. Furthermore, the parties have stipulated that their respective goods are identical and are sold in competition and that the sole question in issue in this proceeding is that of confusing similarity of the terms "Sure-Fit" and "Rite-Fit."

The Assistant Commissioner, in dismissing the opposition,[3] attached little trade mark significance to the word "Fit" in each of the parties' marks, which she described as "in common usage by opposer and others in describing slip covers," and concluded that, except for this weak, common feature, the marks do not look or sound alike.

We are of the opinion that the decision of the Assistant Commissioner is correct and that the opposition must accordingly be dismissed.

In reaching our decision we have been most strongly influenced by the fact that the marks in issue, "Sure-Fit" and "Rite-Fit," are the weakest possible type of mark. The word "Fit," aside from the third-party registrations in evidence, is eminently suitable for use in connection with goods such as ready-made slip covers, where proper fit is of the utmost importance. We need not consider third-party registrations to recognize that the word is often used in connection with the sale of such goods. The word is distinctly descriptive of a characteristic of the merchandise in connection with which it is used. Appellant's use of such phrases in its advertising material as "for perfect, lasting *fit*," "for triple-sure *fit*," "smooth, custom-like *fit*," "a super-*fit* feature," "*fits* chairs of this type," "to make smooth *fit* triple-sure," "insures proper *fit*" and "this cover *fits* separate-cushion Cogswells," is indicative of this fact.

The prefixes "Rite" and "Sure," when added to the suffix "Fit," do little, of course, to remove the terms from the descriptive category. "Rite-Fit" is an obvious misspelling of "Right-Fit" and is

---

2. Reg.No.521,780 issued March 7, 1950, as a secondary meaning mark; Reg. No.281,507 issued March 17, 1931 under the Act of 1920, expired.

3. Though the Assistant Commissioner dismissed the opposition, she nevertheless denied appellee registration of its mark, in light of its concession that "Rite-Fit" is the dominant part of its mark, on the ground that the dominant part had been disclaimed. She gave appellee leave to file either an amendment transferring the aplication to the supplemental register, or evidence establishing secondary meaning. This decision, being ex parte in its nature, is not before us on this appeal.

clearly descriptive of a function of the goods with which the words are used. And though appellant has obtained a registration for this mark on the principal register as a secondary meaning mark, there is nothing in the record to indicate that this mark is not still in the category of a weak mark.

Under these circumstances, we do not feel that appellant is entitled to the broad protection which it seeks. What appellant is in effect asking us to do is to allow it, at least insofar as registration is concerned, to preempt the field as far as the word "Fit" is concerned. We cannot avoid this conclusion despite the fact that appellant stresses the fact that the prefixes "Rite" and "Sure" have the same number of letters and syllables. The fact of the matter is that "Rite" and "Sure" do not look alike or sound alike, factors which we feel, at least in this case, militate against appellant's position. Hillyard Chemical Co. v. Vestal Laboratories, Inc., 206 F.2d 926, 927, 41 C.C.P.A., Patents, 701, is peculiarly applicable to the instant case. In that case this court quoted with approval the following language of the examiner:

> "Aside from the question of laches, however, it is the opinion of the Examiner that the cancellation should be dismissed because of lack of confusing similarity between the notations 'Shine-All' and 'Briten-All.' The notation 'Shine-All' manifestly is highly suggestive of the nature of the goods here involved, and while the notation 'Briten-All' is similarly suggestive thereof, it differs substantially from 'Shine-All' in both appearance and sound. *The applicant having adopted a notation of such character as a trade-mark for its goods may not prevent others from using similarly suggestive but otherwise distinguishable notations as trade-marks for their goods.* * * *" (Emphasis added.)

■ It is unnecessary to cite the numerous other cases of this court wherein the scope to be given to weak trademarks was discussed. It seems both logical and obvious to us that where a party chooses a trademark which is inherently weak, he will not enjoy the wide latitude of protection afforded the owners of strong trademarks. Where a party uses a weak mark, his competitors may come closer to his mark than would be the case with a strong mark without violating his rights. The essence of all we have said is that in the former case there is not the possibility of confusion that exists in the latter case.

■ Appellant further argues that the two marks are similar in meaning and that similarity as to any one of three types of similarity, sound, meaning or appearance, may be sufficient to indicate likelihood of confusion, citing Brown Shoe Company, Inc. v. Sons Shoe Company, 79 USPQ 306 (Commr. Pats.); Cluett, Peabody & Co., Inc. v. Wright, 46 F.2d 711, 18 C.C.P.A., Patents, 937. While we do not dispute the correctness of this rule, it must be emphasized that any one of the three factors *may* be sufficient to indicate likelihood of confusion, but does not *necessarily* do so. See Holiday Casuals v. M. Beckerman & Sons, Inc., 228 F.2d 224, 43 C.C.P.A., Patents, 731. Clearly, all three factors must be examined to reach a sound conclusion in a given case. Coty, Inc., v. Perfumes Habana, S. A., 190 F.2d 91, 38 C.C.P.A., Patents, 1180. Assuming arguendo that the marks "Rite-Fit" and "Sure-Fit" are similar in meaning, we are of the opinion that they are so distinct in sound and appearance as to overcome such similarity in meaning.

For the foregoing reasons, the decision of the Assistant Commissioner is affirmed.

Affirmed.

O'CONNELL, J., was present at the hearing of this appeal, but, because of illness, did not participate in the decision.

JACKSON, J., retired, recalled to participate was present at the hearing of this appeal but did not participate in the decision.