**In re SARKLI, LTD.**

**Appeal No. 83–983.**

**Serial No. 266643.**

United States Court of Appeals, Federal Circuit.

Nov. 18, 1983.

Arnold Sprung, New York City, argued, for appellant.

John F. Pitrelli, Arlington, Va., argued, for appellee. With him on the brief were Joseph F. Nakamura, Sol. and John W. Newhirst, Associate Sol., Washington, D.C.

Before FRIEDMAN, SMITH and NIES, Circuit Judges.

NIES, Circuit Judge.

The decision of the Trademark Trial and Appeal Board (board) of the United States Patent and Trademark Office (PTO) (217 USPQ 93 (1982)), refusing registration of appellant's mark REPÊCHAGE for various skin care products [1] because of the likelihood of confusion with the mark SECOND CHANCE registered for face creams and other toiletries,[2] is reversed.

The board held that "repêchage" is the "French equivalent" of the English words "second chance" and, thus, the marks would evoke the same commercial impression to purchasers familiar with the French language. We conclude that the board erred in holding that the record established the equivalency of the expressions. Thus, no

---

1. Application Ser. No. 266,643, filed June 16, 1980, for "skin care products, namely skin lotions, skin creams, face masks, and skin treatment kits containing a skin conditioner, face mask, seaweed and a thermal mineral treatment composition."

2. Registration No. 759,804, issued Nov. 5, 1963, for "face creams, perfume, and toilet water," and Registration No. 1,013,323, issued June 17, 1975, for "anti-perspirant, hair cream rinse, and hair shampoo."

*prima facie* case was made for denial of registration under 15 U.S.C. § 1052(d).[3]

*Discussion*

The goods of appellant and those identified in the registrations for the mark SECOND CHANCE are in part identical and otherwise closely related cosmetic products which would be likely to come from a single source. The issue of likelihood of confusion, therefore, turns on the similarity of the marks.

To support the finding of equivalency of SECOND CHANCE and REPÊCHAGE, the examiner had relied on the following French-English dictionary definition:

> *The New Cassell's French Dictionary:* repêchage, Rescuing.
>
> *Épreuve de repêchage,* supplementary heat (to give a second chance to the second bests of preliminary heats); second chance (for candidate who has failed an examination).

Appellant relies on the above and on the following authorities as showing that "repêchage" and "second chance" are *not* equivalent French-English terms:

> *Harrap's New Standard French and English Dictionary,* J.E. Mansion, 1977: repêchage, (a) fishing up (again), fishing out (again); picking up (of torpedo, etc.); Min. [Mining]: fishing up (broken drill, etc.); (b) helping, lending a hand to, rescuing (s.o. in difficulties); Sch. [School]: supplementary, second chance, examination (for candidates who have failed); *épreuve de r.,* (i) second chance; (ii) Sp. [Sport]: repêchage.
>
> *Heath's Standard French and English Dictionary,* J.E. Mansion, Part I: repêchage, (a) Fishing up (again), fishing out (again); picking up (of torpedo, etc.).

(b) Lending a hand (to s.o. in difficulties); rescuing. Sch. [School] F: Supplementary examination (esp. that held in October for candidates who failed in July at the baccalaureat examination). *Épreuve de r.,* second chance (offered to those who have failed in a test of any kind.)

None of these definitions makes "second chance" the exact translation of "repêchage." The above authorities indicate that "épreuvre de repêchage" has that meaning, but not "repêchage" itself. In special circumstances, "repêchage" appears to have the connotation of a reprieve or, loosely, a second chance. In the academic world, "repêchage" means a make-up or second chance examination; in mining, the retrieval of equipment; in marine salvage, fishing things out of the water. Each of these meanings in a broad sense connotes giving a second chance, but this is not the same as saying that "repêchage" is *equivalent* to "second chance."[4] The test to be applied to a foreign word vis-à-vis an English word with respect to equivalency is not less stringent than that applicable to two English words. "Second chance" in English, for example, is not the equivalent of the word "rescue." Moreover, such similarity as there is in connotation must be weighed against the dissimilarity in appearance, sound, and all other factors, before reaching a conclusion on likelihood of confusion as to source. *Sure-Fit Products Co. v. Saltzson Drapery Co.,* 254 F.2d 158, 160, 117 USPQ 295, 297 (CCPA 1958).

We do not, of course, rule out the possibility that likelihood of confusion may be shown between an English word mark and a foreign word mark which are not exact synonyms, just as two English word marks need not be exact equivalents in

---

3. 15 U.S.C. § 1052(d) provides:
No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
\* \* \* \* \* \*
(d) consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake or to deceive: \* \* \* \*

4. We also note that no English to French definition is cited which would support the conclusion that "second chance" becomes "repêchage" when translated into French.

meaning to create a likelihood of confusion. But where the only similarity between the marks is in connotation, a much closer approximation is necessary than has been shown here to justify a refusal to register on that basis alone where the marks otherwise are totally dissimilar.[5]

■ The board also looked to the definition of "repêchage" in Webster's Collegiate and Unabridged dictionaries,[6] which show that the French word is part of the English vernacular. The definition found there is:

> repêchage [. . . .]: a trial heat (as in rowing) in which first-round losers are given another chance to qualify for the semifinals. [Derivation omitted.]

The above-quoted definition indicates that "repêchage" is not the equivalent of "second chance" in English, but rather has only a very specialized meaning, in sports parlance, of a trial heat.

While the PTO may reject an application *ex parte* solely because of similarity in meaning of the mark sought to be registered with a previously registered mark, similarity which would lead one to conclude that confusion is likely has not been shown between SECOND CHANCE and REPÊCHAGE whether "repêchage" is considered as a French word or as a word in the American vernacular.

The decision of the board is, accordingly, *reversed*.

REVERSED.

---

5. We do not hold that equivalency necessarily means there is a likelihood of confusion, but only that the initial fact of equivalency was not here established. Further, our holding does not mean that the registrant of SECOND CHANCE could not prevail in an *inter partes* proceeding on a different record.

6. Appellant requested rehearing because of the board's reliance on additional source material by judicial notice. Contrary to appellant's argument, Fed.R.Evid. Rule 201 does not require

a hearing, *ipso facto*, upon request of a party whenever judicial notice is taken. Appellant made no offer to show that judicial notice was improper under the rule. The board noted the fact that "repêchage" was a word adopted into English. This can be confirmed by checking the cited dictionary. No hearing could have established the contrary and the board's action was entirely in accordance with the rule. Appellant is, in fact, attacking the board's conclusion, not the definition noticed.